## MUELLER v. BOBBITT et ux.
### No. 12439.

Court of Civil Appeals of Texas. Fort Worth.
March 7, 1931.

Rehearing Denied April 18, 1931.

Bartlett, Brown & Thornton, of Dallas, for appellant.

Simpson, Collins & Moore, of Fort Worth, for appellees.

BUCK, J.

D. T. Bobbitt, who in his first amended petition was joined by his wife, sued Fred Mueller for injuries to Mrs. Bobbitt and to their Essex automobile, alleged to have occurred by reason of the Bobbitt car being struck by the Mueller car on April 7, 1929, on the White Settlement road, west of Fort Worth. Plaintiffs alleged that, while they were coming from Lake Worth to Fort Worth early one morning, and soon after they passed the Mueller home, the car driven by Mueller came up behind them, and in attempting to pass their car the Mueller car sideswiped and hit their car, turning their car around, practically demolishing and destroying the market value of their car, and by reason of the collision Mrs. Bobbitt was thrown from the front seat, where she had been riding with her husband, to the back seat; that plaintiffs were not aware of the approach of defendant's car until it hit their car; that they heard no signal given by the defendant; that the striking of plaintiffs' car was due to defendant's negligence in various respects; that the injuries to plaintiff Ruth Bobbitt and the damage to their car were directly and proximately caused by one or more acts of negligence, either acting separately or concurrently in violation of certain provisions of the criminal statutes, to wit, that the defendant was driving in excess of 35 miles an hour, in violation of article 789 of the Penal Code as revised in 1925; that defendant was negligent on the occasion involved, in that at the time he struck plaintiffs' car he was driving his car at such a rate of speed as to endanger the life and limb of any person or the safety of any property; that he did not have adequate brakes in good working order, in violation of the criminal statute; that in attempting to drive his car around plaintiffs' car he turned again to the right before the road

was reasonably clear of such overtaking vehicle, in violation of subdivision C of article 801 of the Penal Code; that he did not give audible and suitable signal before attempting to pass their vehicle, in violation of article 801 of the Penal Code; that defendant was negligent on the occasion in question, in that he was operating his car at the time of the accident at a rate of speed of about 40 miles an hour, in a thickly populated area, and on a highway and at a time of day when thousands of persons and motorcars, wagons, and other vehicles were traveling along such highway and crossing in different directions; that defendant was negligent, in that the highway over which plaintiff and defendant were traveling was a wide road affording sufficient and ample room for cars to overtake and pass each other, and there was adequate and sufficient room and space on the left of plaintiffs' car for the car of defendant to have traveled and avoided plaintiffs' car, all of which he negligently failed to do; that defendant was negligent, in that on the occasion in question he was not keeping the proper lookout and exercising ordinary care to keep the proper lookout in the direction he was going and discovering plaintiffs and other persons on the highway and the danger that he would strike and collide with them if he continued in the direction he was going.

It was alleged by plaintiffs that Mrs. Bobbitt at the time of the collision was a woman of youthful years, was strong and robust of health, and as a result of said collision she suffered painful and permanent injuries, and she received cuts on her head, shoulders, back, legs, and arms, her head was severely mashed and bruised, her spine hurt, and she received various other injuries to her ligaments, muscles, and tendons, and her nervous system was injured and greatly affected, and her female organs were greatly injured; that Mrs. Bobbitt was pregnant, and as a result of said collision she suffered a miscarriage, which caused her great pain, mental anguish, grief, and sorrow, which further affected her nervous system; that she was confined to her bed for several weeks after said accident, and as a result of said injuries she was forced to submit to an operation consisting of a curettement. Plaintiffs prayed for judgment and damages in the sum of $10,000.

Plaintiffs alleged that the car they were in was an Essex coach, 1926 model; that it was in a good state of repair, and that it was damaged to such an extent that it cannot be profitably repaired, and that it was of the reasonable cash market value at the time of the accident of the sum of $300, which amount has been lost by plaintiffs as a result of the collision; that they have been forced to expend the sum of $500 for doctors' bills, nurses' bills, hospital bills, and medical bills on account of the injuries to Mrs. Bobbitt, and that they will expend in the future the sum of $500 for such bills; that plaintiff was strong and robust in health, and capable of doing, and was doing, the ordinary duties of a housewife and mother, but that as a result of said collision and resulting injuries she has not been able to perform such duties since the accident, and will not be able to perform the same for the balance of her life, to their further damage in addition to those alleged in the sum of $5,000.

### Opinion.

The cause was tried on November 14, 1929, before the court without the intervention of a jury, and the court, after hearing the evidence and listening to the arguments, rendered judgment for the Bobbitts for $4,000 and interest at 6 per cent. per annum until the judgment is fully satisfied, and all costs of court against the defendant, Fred Mueller. From this judgment the defendant has appealed to this court.

The Ninety-Sixth district court convened on October 7, 1929, and adjourned on January 4, 1930. Defendant's bill of exception No. 1 complains of the failure of the trial court to file his findings of fact and conclusions of law. In this bill is copied certain correspondence between W. L. Thornton, plaintiffs' attorney, and Judge Lattimore. The first letter, dated November 25, 1929, at Dallas, reads as follows:

"Judge Hal Lattimore, Fort Worth, Texas.

"Dear Sir:—In re Bobbitt v. Mueller. Will you please make up findings of fact and conclusions of law in the above case? It has occurred to us that probably the fairest finding of facts would be a statement of facts in narrative form. So if you have no objection to making your findings of facts that way just instruct your stenographer to make up a narrative statement of facts."

It is stated in the bill that the letter was received by the court and turned over to the official court reporter for reply, and that said reporter did reply to the same on December 2, 1929, by writing on the back of said letter, the following letter:

"December 2, 1929.

"Mr. Thornton: Judge Lattimore asks that I advise you he will be glad to make for you his findings of fact and conclusions of law in either manner you most desire it. If you wish to order from me the narrative statement of facts in the case, at your expense, he will be glad to consider that as his findings and conclusions; otherwise he will make up for you in more brief form his own findings of fact and conclusions of law. Please advise us further your wishes in the matter.

"[Signed] Gordon Whatley, Reporter."

That letter was received by said Thornton on the 4th or 5th day of December, 1929, who

immediately and within two or three days from the reply of said letter got in touch with said reporter, over the telephone, and instructed him to make up said narrative statement of facts, which said reporter did, and on February 11, 1930, he called the said Thornton on the telephone and advised him that the statement of facts was ready, and he was informed by said Thornton that he would be in Fort Worth not later than noon February 12, 1930; that said Thornton arrived at Fort Worth about ten minutes before 12 o'clock noon, and went immediately to the courtroom of the Ninety-Sixth district court, where the judge thereof was engaged in the trial of a case; that he then went to the office of the reporter, and was shown the statement of facts in narrative form; that later, and after the court had adjourned for the noon recess, the said Thornton inquired of the court if he had prepared his conclusions of law and findings of fact, and was told by the court that no conclusions of law had been filed, but that the court would approve the narrative statement of facts prepared by the reporter as the court's findings of fact, and the court proceeded to sign the certificate prepared by the reporter for that purpose. Whereupon the said Thornton got in touch with Arthur Lee Moore, one of the attorneys for the plaintiffs, and explained the situation to him, when the said Moore stated that he had had no notice that a request for findings of fact and conclusions of law had been made. Counsel for defendant then excepted to the failure of the trial court to file his findings of fact and conclusions of law as required by article 2247 of the Statutes. This bill is approved by Judge Lattimore in the following words:

"Approved: H. S. Lattimore—Judge.

"Approved with this statement that the court understood and still understands that defendant preferred the narrative statement of facts prepared by the reporter as the findings and conclusions of the court and that the court knew at all times that this narrative was being prepared and that same has been prepared and signed by the court and delivered to counsel for plaintiff, that independent findings and conclusions would have been filed by the court before February 3, 1930 (the trial term expiring January 3, 1930) except for reliance upon the fact that attorney for plaintiff had taken the matter of such narrative in his own hands and was having same prepared as above stated.

"H. S. Lattimore, Judge.
"Signed February 12, 1930."

■ The statement of facts before us was filed in the lower court on June 26, 1930, and filed in this court on June 27, 1930. There is no exception made by appellee to the filing of the statement of facts at a late date, and, appellant having filed the same, he is in no position to take advantage of his own delay. We believe from the correspondence above noted and the statement of Judge Lattimore attached to the approval of the bill of exception that the court had reason to believe, and did believe, that appellant was in favor of the filing of the statement of facts in lieu of the filing of the findings of fact and conclusions of law. There is in the record three conclusions of law filed by the trial court on February 12, 1930, as follows:

"1. That defendant was guilty of negligence in failing to keep a proper lookout and in driving too fast and too near plaintiff's car and same was proximate cause of the accident.

"2. Plaintiffs were not negligent.

"3. That plaintiff should recover in the amount of the judgment."

■ The fourth assignment is directed to one conclusion of law filed by the trial court that the defendant was guilty of negligence in failing to keep a proper lookout, because the undisputed evidence showed that defendant, at all times, kept a proper lookout prior to the collision. It is true that the defendant below testified that he was following the Bobbitt car about 25 or 30 feet behind it, and the road was sloppy and wet, and the Bobbitt car stopped suddenly right in front of him, and he tried to avoid hitting it, but the front right fender or wheel of his car hit the left hind wheel of the Bobbitt car. But the Bobbitts testified that they did not stop their car, but were going at lessened rate of speed, some 5 or 10 miles an hour, when the accident occurred. The trial court was the judge of the credibility of the witnesses and of the facts proved, and we do not think his findings can be disturbed on a conflict of testimony. Pope v. Beauchamp, 110 Tex. 271, 280, 219 S. W. 447.

■■ The fifth assignment complains of the conclusions of law filed by the court that the defendant was guilty of negligence in driving too fast, because, as alleged, the undisputed testimony of both plaintiff and defendant showed that defendant was not driving faster than 30 miles an hour prior to the collision. The Bobbitts both testified that they were not aware of a car following their car until their car was hit by the Mueller car. Therefore they could not testify, and did not testify, as to how fast the Mueller car was being driven. But one following a car may be negligent in getting too close to the car ahead, so that he cannot easily avoid hitting it, and we think the court was authorized to find from the evidence that Mueller was too close to the car ahead, and that such fact was one of the reasons for the collision. The court was not bound to believe Mueller's testimony, as he was an interested party, the defendant in the case.

■ The eighth assignment complains that the court was in error in rendering judgment

for the plaintiffs because it was shown by a great preponderance of the evidence that the injuries sustained by plaintiffs were the result of an unavoidable accident. We think the evidence is sufficient to show that the injuries were sustained through the negligence of the defendant and were not the result of an unavoidable accident.

We have carefully read the cases cited by appellant on this assignment, and find nothing contrary to our holding. Vesper v. Lavender (Tex. Civ. App.) 149 S. W. 377; Williams v. Pool (Tex. Civ. App.) 293 S. W. 233.

The ninth assignment complains of the conclusion of law that plaintiffs were not negligent, which finding was in the face of the undisputed testimony of all parties, and especially against the testimony of plaintiffs themselves, where they both admitted that they did slow down their car from a speed of 25 to 30 miles an hour to 5 to 10 miles an hour, without holding out their hands or giving any kind of warning of their intention to slow down or stop their car.

The evidence of D. T. Bobbitt was that his car was running between 5 and 10 miles an hour, and was just rolling down the hill; that he did not hear Mr. Mueller give any signal or warning of any kind indicating his approach. His wife testified to practically the same tenor.

Article 796, of the Penal Code, reads in part:

"Every motor vehicle shall be equipped with a bell, gong, horn, whistle or other device in good working order, capable of emitting an abrupt sound adequate in quality and volume to give warning of the approach of such motor vehicle to pedestrians. * * * Every person operating a motor vehicle shall sound said bell, gong, horn, whistle or other device whenever necessary as a warning of danger but not at other times or for other purposes. * * *"

Article 801, subd. (D), reads: "It is the duty of the driver, rider, or operator of a vehicle about to be overtaken and passed to give way to the right in favor of the overtaking vehicle on suitable and audible signal, given by or on behalf of the operator, driver or other person in charge and control of such overtaking vehicle, if such overtaking vehicle be a motor vehicle."

Article 801, subd. (J), reads: "The person in control of any vehicle moving slowly along upon any public highway shall keep such vehicle as closely as possible to the right hand boundary of the highway, allowing more swiftly moving vehicles reasonably free passage to the left."

Article 801, subd. (K), reads: "The person in charge of any vehicle upon any public highway before turning, stopping or changing the course of such vehicle shall see first that there is sufficient space for such movement to be made in safety, and if the movement or operation of other vehicles may reasonably be affected by such turning, stopping or changing of course, shall give plainly visible or audible signal to the person operating, driving or in charge of such vehicle of his intentions so to turn, stop or change said course."

The testimony of plaintiffs was that their car was on the right-hand side of the road and the right-hand wheels were off the paving. We do not see how it can be reasonably claimed that they were negligent or that by their acts they contributed to or caused the accident in question.

After giving a careful study of the record, including the statement of facts, we conclude that the judgment of the trial court should be affirmed, and it is so ordered.