Samuel E. **HATCHER**, Appellant,

v.

Sherdie Kernon **MEWBOURN**, Appellee.

No. 7982.

Court of Civil Appeals of Texas, Texarkana.

July 21, 1970.

Rehearing Denied Aug. 11, 1970.

Charles W. Spencer, Geary, Brice, Barron & Stahl, Dallas, for appellant.

Royal H. Brin, William M. Rippey, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

CHADICK, Chief Justice.

Before daylight on the 5th day of July, 1967, Mr. Samuel E. Hatcher and Mr. Sherdie Kernon Mewbourn were in separate cars driving westward on Jefferson Boulevard in Dallas County, on their way

to the places of their employment; their vehicles collided. Hatcher was driving a Chevrolet paneled truck, and Mewbourn operated a 1966 Ford Mustang. A moderate to heavy rain was falling. Both cars had headlights burning and windshield wipers working. In the area relevant to this case, Jefferson Boulevard was marked for three lanes of westward moving motor traffic. Hatcher occupied the north, or outside, lane. Mewbourn was in the next, or middle lane. Just prior to collision, Mewbourn was overtaking Hatcher. Their respective cars were moving at a 30 miles per hour speed for Mewbourn and a 25 to 30 mile speed for Hatcher.

For some time prior to drawing abreast of Hatcher, Mewbourn had noticed the panel truck ahead in the lane to his right. He testified that he had drawn up nearly even with the panel truck, that his front bumper was within four to six feet of being even with the front bumper of Hatcher's vehicle. Hatcher denied that he saw Mewbourn's automobile at any time, saying in his deposition that he remembered no vehicles occupying the middle lane just prior to the collision, but testified at the trial that he was aware of traffic in the lane to his left and its occupancy by other vehicles. Both Hatcher and Mewbourn had been in their respective lanes for some time and had so remained until the collision between their vehicles, if the testimony of each is accorded verity. Both claimed that their attention was so directed at the time and just prior to the instant of collision, that neither actually saw the other's vehicle nor was aware of the other's position on the street. The Mustang's front bumper was bent backward on the right side and the right fender was dented at the rear of the headlight. The panel truck was stove in on the left side at a point about four feet back from the front end; greater damage was done when the vehicle struck a post as it careened off the street sharply to the right.

The jury found Mewbourn failed to maintain a proper lookout, that such fail-ure was negligence and a proximate cause of the collision. The jury also found Hatcher failed to maintain a proper lookout, that such failure was negligence and a proximate cause of the collision. The trial court rendered a take nothing judgment against Hatcher in his suit for damages against Mewbourn. As grounds for reversal, it is argued that Hatcher "had no duty to keep a lookout as to appellee under the facts and circumstances in this case."

"* * * [T]he problem of duty is as broad as the whole law of negligence, and * * * no universal tests for it ever has been formulated * * *. It is imbedded far too firmly in our law to be discarded, and no satisfactory substitute for it, by which the defendant's responsibility may be limited, has been devised. But it should be recognized that duty * * * is not sacrosanct in itself but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. * * * [N]o better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists. * * * That is to say, that whenever the automobile driver should, as a reasonable man, foresee that his conduct will involve an unreasonable risk of harm to other drivers or to pedestrians, he is then under a duty to them to exercise the care of a reasonable man as to what he does or does not do." Courts and specialists in tort law, it is thought, generally agree upon the conclusions quoted, they are excerpts from William L. Prosser, Law of Torts § 53, 3rd ed. (1964), and are not textually connected. Building on this foundation, for the purposes of this case, it may be said that the presence of other vehicles, street conditions, traffic controls and rules of the road combine with common experience to outline duty and determine the vigilance, "lookout", a prudent motorist would maintain in the exercise of ordinary care.

■ It is doubtful that any specific duty might be named that is paramount to others in every conceivable surrounding. The courts have frequently concluded that a motorist owed no duty to maintain a lookout to the rear as it viewed the facts of the particular case under discussion. Valley Film Service v. Cruz, 173 S.W.2d 952 (Tex.Civ.App. San Antonio, 1943, error ref'd, w.o.m.); Le Sage v. Smith, 145 S.W. 308 (Tex.Civ.App. Fort Worth 1940, error dism'd, judg. cor.); Colom v. Vititow, 435 S.W.2d 187 (Tex.Civ.App. Houston (14th) 1968, error ref'd n.r.e.); Brock v. Boss, 416 S.W.2d 456 (Tex.Civ.App. Waco 1967, error ref'd, n.r.e.); Brock v. Boss, 416 S. error ref'd, n.r.e.); Solana v. Hill, 348 S.W. 2d 481 (Tex.Civ.App. Eastland 1961, error ref'd, n.r.e.); Kuykendall v. Doose, 260 S. W.2d 435 (Tex.Civ.App. Amarillo 1953, error ref'd, n.r.e.). These and numerous similar cases do not constitute a base for an inflexible general rule of conduct, as there a numerous cases in which it has been held under the circumstances shown a motorist is duty bound to maintain a lookout to the rear (Perkins v. Fisher, 395 S.W.2d 657 (Tex.Civ.App. Amarillo 1965, no writ); Jones v. Downey, 359 S.W.2d 116 (Tex. Civ.App. San Antonio 1962, error ref'd n.r. e.); Manning v. Block, 322 S.W.2d 651 (Tex.Civ.App. Beaumont 1959 n.r. e.); Scott v. McElroy, 361 S.W.2d 432 (Tex.Civ.App. San Antonio 1962, n.r.e.); Bourbon v. Glover, 431 S.W.2d 650 (Tex. Civ.App. Beaumont 1968, no writ); Hill v. W. E. Brittain, Inc., 405 S.W.2d 803 (Tex.Civ.App. Fort Worth 1966, no writ); Kerr v. Dildine, 410 S.W.2d 808 (Tex.Civ. App. Austin 1967, no writ); or laterally (Lynch v. Ricketts, 158 Tex. 487, 314 S.W. 2d 273 (1958); Denton v. Yellow Cab Co., 400 S.W.2d 931 (Tex.Civ. App. Houston 1966, n.r.e.); 60A C.J.S. Motor Vehicles § 287). Summed up broadly, public policy imposes a duty upon a motorist when operating a vehicle on a public street to be alert and on watch for all that affects safe operation and is normally visible to him in the exercise of due care. In De Winne v. Allen, 154 Tex. 316,

277 S.W.2d 95 (1955), it is said: "Every person proceeding along or across a public street is under the duty at all times to maintain a proper lookout for his own safety, and may not proceed blindly in a disregard of danger that might reasonably be anticipated to exist."

■ In this instance, when considered in its most favorable aspect in support of the judgment, evidence is found that Mewbourn's Mustang was alongside and gradually drawing even with Hatcher's panel truck. It was dark and headlights were ablaze. It is debatable that the presence of Mewbourn's automobile on Hatcher's left could have escaped the attention of a prudent driver in Hatcher's position. The circumstances present a jury question on whether or not facts existed that created a duty. Webb v. City of Lubbock, 380 S.W.2d (Tex.Civ. App. Amarillo 1964, n.r.e.); C & R Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.1966); Rash v. Whisennand, 453 S.W.2d 353 (Tex.Civ.App. Houston 14th, writ history undetermined). The record does not show as a matter of law that the circumstances laid no duty upon Hatcher to keep a "lookout as to appellee." The issue submitted was not improper because of "no duty".

■■ It is further argued under an appropriate point of error that there is no causal connection between the failure to keep a proper lookout and the collision between the two motor vehicles. The rule is that causal relation exists when a party's failure or omission is a substantial factor in bringing about a particular result. Hopson v. Gulf Oil Corporation, 150 Tex. 1, 237 S.W.2d 352 (1951); also see the discussion of Proof of Causal Relation in William L. Prosser, Law of Torts, Sec. 41 (3rd edition, 1964). All parties concede that the two vehicles collided. From the evidence about to be noticed together with that previously mentioned, (considered in the aspect most favorable to the jury's answers), it is reasonably probable that the two vehicles drifted together at or near the common boundary of the two traffic lanes.

Mewbourn's testimony as a whole may be construed as an avowal or claim that he guided his automobile with reference to the left line of his traffic lane and, by inference, was within the traffic lane at all material times. The jury was free to infer that the collision occurred because Hatcher drifted into Mewbourn's line of progress. Failure to find such fact affirmatively in another special issue does not bar or foreclose such implied finding in this instance. C & R Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.1966). From these facts plus those mentioned earlier relative to speed, position, visibility, etc., the jury was authorized to reason that a proper lookout would have disclosed to Hatcher that he was drifting into the course of Mewbourn's vehicle as they moved side by side and that Hatcher could have, when opportunity for evasive action and all of the other circumstances are considered, and would have in the exercise of caution for his own safety, steered his vehicle out of harms way. Failure to keep a proper lookout under the circumstances would be a substantial factor in causing the collision.

As to the limitation of liability to foreseeable consequences which is also argued, Hopson v. Gulf Oil Corp., supra, approves and quoted the following from William L. Prosser, Law of Torts, § 48, to-wit: "* * * the consequences must be a normal, substantial part of the risk, which a reasonable man would recognize as fairly to be taken into account by the defendant at the time of his act." Evidence of a driver in a busy, multilaned street, moving at a speed of 25 to 30 miles an hour, taking no notice whatever of vehicular traffic in the adjoining left lane, makes it reasonably probable in human experience that a collision would occur similar in nature to the one that did occur. It is for the jury to say whether or not a prudent man would anticipate such occurrence in this instance. The evidence supports the jury's finding.

Appellant's motion for rehearing is overruled, but it has offered an opportunity to clarify the basis of decision. Pursuant to such effort, the original opinion filed June 23, 1970, is withdrawn and this substituted for it. All points of error have been considered and are overruled. Judgment of the trial court is affirmed.